CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

February 20, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

HENRY P. WRIGHT,                    )
    Plaintiff,                     )     Case No. 7:24-cv-00571
                                   )
v.                                  )
                                   )     By: Hon. Michael F. Urbanski
KATHLEEN H. SAWYER, et al.,         )     Senior United States District Judge
    Defendants.                    )

## MEMORANDUM OPINION

Henry P. Wright, a former federal inmate proceeding pro se, filed this civil action against Kathleen H. Sawyer, the former Director of the Federal Bureau of Prisons (BOP); Deborah Coles, a former Parole Supervisor with the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA); and Richard S. Tischner, the Director of the CSOSA.[1] The defendants have moved to dismiss Wright's amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The case is presently before the court on the defendants' motion to dismiss, ECF No. 26, and Wright's motions to amend the amended complaint to include additional claims and defendants, ECF Nos. 30 and 34.[2] For the reasons set forth below, the defendants' motion is **GRANTED**, and Wright's motions are **DENIED**.

## I.     Background

## A.     Wright's Amended Complaint

According to the amended complaint, Wright was in the custody of the BOP from

---

[1] The CSOSA is a federal agency charged with providing supervision to D.C. Code offenders on supervised release, probation, or parole. Doe v. United States Parole Comm'n, 602 F. App'x 530, 531 (D.C. Cir. 2015) (citing Pub. L. No. 105-33 § 11123(a), (c), 11 Stat. 251, 748–49 (1997), codified at D.C. Code § 24-133(a), (c)).

[2] The case was transferred to the undersigned on January 29, 2026.

2015 to 2021. Am. Compl., ECF No. 23, at 6. While housed at United States Penitentiary (USP) Hazelton in West Virginia, Wright engaged in an "inappropriate relationship with a white staff member." Id. As a result, unidentified federal officials allegedly "used their prison informants to antagonize, harass, [and] intimidate [Wright] into violent confrontations," and he "retreated into protective custody." Id.

Wright alleges that he continued to endure similar misconduct despite being transferred to other BOP facilities. While confined at Federal Correctional Institution (FCI) Edgefield in South Carolina, a prison informant threatened to shoot Wright. Id. Wright alleges that informants at other BOP facilities also harassed and intimidated him. Id. He claims that the Eighth Amendment, Title IX of the Education Amendments of 1972 (Title IX), and the Fourteenth Amendment "appl[y] to these atrocities" that occurred while he was in BOP custody. Id.

After Wright was released from BOP custody in 2021 and moved to Washington, D.C. ("D.C."), defendant Coles served as his parole supervisor. Id. at 7. Wright alleges that he continued to be antagonized by prison informants from 2022 through 2023. Id. When Wright mentioned to Coles that he was still being harassed by prison informants, Coles told him to "hang on" and that he would soon be released from parole. Id.

Wright eventually moved from D.C. to Roanoke, Virginia. Id. He alleges that he continued to be exposed to "aggressive scare tactics" following the move and that he "had a failed suicide attempt due to these atrocities" in June 2024. He claims that the Fourth Amendment and the Eighth Amendment "appl[y] to these atrocities," and he seeks to hold

Coles and her supervisor, defendant Tischner, liable for the alleged violations of his federal constitutional rights. Id. at 7–8.

At the conclusion of the amended complaint, Wright asks that the court grant him $50 million in compensatory damages and $50 million in punitive damages. Id. at 9.

**B.    The Defendants' Motion to Dismiss**

The defendants liberally construed the amended complaint to assert claims against them in their official and individual capacities. The defendants contend, among other arguments, that the court lacks jurisdiction over any claim asserted against them in their official capacities and that the amended complaint fails to state a viable claim against them in their individual capacities.

In support of their motion to dismiss for lack of subject matter jurisdiction, the defendants submitted declarations executed by Misty Shaw and Donald Tanguilig. To the extent the amended complaint can be construed as seeking relief under the Federal Tort Claims Act (FTCA), Shaw's declaration indicates that the BOP has no record of any administrative tort claim submitted by or on behalf of Wright during his period in BOP custody from November 30, 2015, to October 19, 2021. Shaw Decl. ¶ 32, ECF No. 27-1. Similarly, Tanguilig's declaration indicates that the CSOSA has no record of any administrative tort claim submitted by or on behalf of Wright. Tanguilig Decl. ¶ 3, ECF No. 27-9.

**C.    Wright's Motions to Amend**

In addition to opposing the defendant's motion to dismiss, Wright has moved to amend the operative complaint to include additional claims and defendants. His first motion to amend refers to "emotional distress" and the "disabling mental condition" that resulted in

an attempted suicide on June 12, 2024. ECF No. 30 at 1. The motion also mentions deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment and unspecified violations of the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, and "D.C. ethnic codes." Id. at 1, 11. Wright seeks to add the BOP and unknown BOP officials as "new defendants." Id. at 1, 4. He also seeks to add "D.C. as a new defendant" in its "official . . . and individual capacities," as well as "Amtrak/ John Doe." Id. at 1, 16. He asserts that his federal constitutional claims are cognizable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1983. Id. at 10–16. He also states that he wants to amend his Title IX claim to include a claim for "retaliation for Title IX accusation." Id. at 5.

Wright's second motion to amend simply states that he wishes to add claims against the existing defendants in their official capacities and that he seeks to add the BOP, unknown BOP officials, and Amtrak as defendants. ECF No. 34.

## II.    Standards of Review

The defendants' motion to dismiss was filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. "The plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Mowery v. Nat'l Geospatial-Intelligence Agency, 42 F.4th 428, 433

4

(4th Cir. 2022) (internal quotation marks omitted). "Dismissal should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (quoting Balfour Beatty Infrastructure, Inc. v. Mayor of Baltimore, 855 F.3d 247, 251 (4th Cir. 2017)).

Under Rule 12(b)(6), a defendant may seek dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Wright's motions to amend are governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 permits a plaintiff to amend a complaint "once as a matter of course" within certain time limits, after which a complaint may be amended "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); see also Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010) (noting that Rule 15(a) applies to amendments seeking to add parties). Although courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 217–18 (4th Cir. 2019) (internal quotation marks omitted). "A proposed amendment is futile

when it is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (internal quotation marks and citation omitted). "Where state law claims are before a court based on supplemental jurisdiction, denial of leave to amend is appropriate where all amended federal claims would be futile and where the court would decline to exercise supplemental jurisdiction under [28 U.S.C.] § 1367(c)(3) over the state claims." Crump v. Passaic Cnty., 147 F. Supp. 3d 249, 254 (D.N.J. 2015).

### III.    Discussion

### A.    The Defendants' Motion to Dismiss

The court will first address the motion to dismiss filed by the defendants. As noted above, the defendants argue that the court lacks jurisdiction over any claim against them in their official capacities and that the complaint fails to state a claim against them in their individual capacities.

### 1.    Claims Against the Defendants in Their Official Capacities

An action against federal officials sued in their official capacities amounts to an action against the United States. Thurston v. United States, 810 F.2d 438, 444 (1987). "As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005). "[S]overeign immunity is jurisdictional in nature and deprives courts of the power to hear suits against the United States absent Congress's express consent." United States v. Miller, 604 U.S. 518, 527 (2025) (internal quotation marks omitted).

"The FTCA effects a limited waiver of sovereign immunity and creates a cause of action for certain tort claims against the United States 'where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Bulger v. Hurwitz, 62 F.4th 127, 142 (4th Cir. 2023) (quoting 28 U.S.C. § 1346(b)(1)). "This waiver permits suits only on terms and conditions strictly prescribed by Congress." Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 741 (4th Cir. 1990).

When filing suit under the FTCA, a plaintiff must satisfy certain jurisdictional prerequisites. Est. of Emburgh v. United States, 95 F.4th 795, 800 (4th Cir. 2024). The jurisdictional prerequisites include three administrative exhaustion requirements:

> First, a plaintiff must "present[ their] claim to the appropriate Federal agency[.]" [28 U.S.C.] § 2675(a). Second, when a plaintiff presents their claim to the agency, the plaintiff must state the sum they are seeking for their claim. Id. § 2675(b) ("A[n a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency[.]"). Third, the plaintiff must wait either for the claim to be "finally denied by the agency" or for the agency to fail "to make final disposition of [the] claim within six months after it is filed." Id. § 2675(a).

Est. of Emburgh, 95 F.4th at 801 (second alteration added). Because the administrative exhaustion requirements are jurisdictional, they "may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986). The Supreme Court has made clear that the FTCA bars all claimants from bringing suit until they have exhausted their administrative remedies, including pro se litigants. McNeil v. United States, 508 U.S. 106, 113 (1993).

In this case, Wright has not alleged that he satisfied the administrative exhaustion requirements set forth in the FTCA, and the evidence submitted by the defendants indicates that he did not present an administrative claim to the BOP or the CSOSA prior to filing suit.

Because Wright has not alleged or shown that he properly exhausted his administrative remedies, the court lacks jurisdiction over any claim asserted under the FTCA. Est. of Emburgh, 95 F.4th at 800–01, 806.

Additionally, although the FTCA "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity," constitutional tort claims are "not actionable under [28 U.S.C.] § 1346(b)." FDIC v. Meyer, 510 U.S. 471, 478 (1994). Therefore, the United States "has not rendered itself liable under § 1346(b) for constitutional tort claims," and such claims do not fall within the jurisdictional grant provided by the FTCA. Id.

Similarly, Title IX, which prohibits sex discrimination in "any education program or activity receiving Federal Financial assistance," 20 U.S.C.§ 1681(a), does not create a private cause of action against the United States, federal agencies, or federal officials in their official capacities. Although Title IX's anti-discrimination provision applies to state or local government entities that receive federal financial assistance, see 20 U.S.C. § 1687 (defining the term "program or activity" for purposes of Title IX), Title IX is "silent as to the United States and its agencies." Archer v. Reno, 877 F. Supp. 372, 379 (E.D. Ky. 1995). Thus, Title IX does not waive the federal government's immunity from suit. See Lane v. Pena, 518 U.S. 187, 192 (1996) (explaining that a waiver of the federal government's sovereign immunity "must be unequivocally expressed in statutory text"); Grappell v. Cardona, No. 1:24-cv-23937, 2025 WL 947545, at *1 (S.D. Fla. Mar. 28, 2025) (noting that a plaintiff could not rely on Title IX to waive the sovereign immunity afforded to the Secretary of Education "since Title IX does not

create a private cause of action against federal officials, federal agencies, or the federal government itself").

For these reasons, the claims asserted in the operative complaint against Sawyer, Coles, and Tischner in their official capacities must be dismissed without prejudice for lack of subject matter jurisdiction. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995) ("If . . . the United States has not waived its immunity . . . , the case should be dismissed for want of jurisdiction under Rule 12(b)(1)."); see also Goldman v. Brink, 41 F.4th 366, 369 (4th Cir. 2022) (noting that a dismissal based on a "defect in subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits") (internal quotation marks omitted).

### 2.    Claims Against the Defendants in Their Individual Capacities

Sovereign immunity does not shield federal officials sued in their individual capacities. See Lewis v. Clarke, 581 U.S. 155, 163 (2017) ("[S]overeign immunity does not erect a barrier against suits to impose individual and personal liability.") (internal quotation marks omitted). Nonetheless, Wright's claims for damages against the defendants in their individual capacities must be dismissed for failure to state a claim upon which relief may be granted.

### a.    Title IX Claim

Wright has no viable claim under Title IX against the defendants in their individual capacities. As indicated above, Title IX applies to education programs and activities that receive federal financial assistance, and "it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009); see also Doe v. District of Columbia, 151 F.4th 435, 446

9

(D.C. Cir. 2025) ("Title IX does not provide for individual liability; only a recipient of federal funds may be liable for damages under Title IX.") (quoting <u>Bose v. Bea</u>, 947 F.3d 983, 988 (6th Cir. 2020)); <u>Bracey v. Buchanan</u>, 55 F. Supp. 2d 416, 419 (E.D. Va. 1999) (agreeing with other courts that officials may not be sued in their individual capacities under Title IX). Thus, any Title IX claim asserted against the defendants in their individual capacities must be dismissed.

### b.    Federal Constitutional Claims

Wright also seeks to recover damages against the defendants for alleged violations of the Fourth, Eighth, and Fourteenth Amendments. To the extent Wright relies on the implied cause of action against individual federal officials recognized in <u>Bivens</u>, the court concludes that a <u>Bivens</u> remedy is unavailable for Wright's particular claims.[3]

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts," <u>DeVillier v. Texas</u>, 601 U.S. 285, 291 (2024), and Congress has never provided "a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 130 (2017). In <u>Bivens</u>, the Supreme Court "recognized an implied cause of action for damages against federal officers for certain alleged violations of the Fourth Amendment." <u>Goldey v. Fields</u>, 606 U.S. 942, 942 (2025) (per curiam). Although the Supreme Court "subsequently recognized two additional contexts where implied <u>Bivens</u> causes of action were permitted," it has since "made

---

[3] The court also notes that the Fourteenth Amendment applies only to state action. <u>See</u> <u>San Francisco Arts & Ath., Inc. v. United States Olympic Comm.</u>, 483 U.S. 522, 542 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the USOC and the Federal Government. Therefore, the Fourteenth Amendment does not apply.").

clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." Id. at 942–43 (internal quotation marks omitted); see also Egbert v. Boule, 596 U.S. 482, 483 (2022) (emphasizing that "recognizing a Bivens cause of action is a disfavored judicial activity") (internal quotation marks omitted).

The Supreme Court has established a two-part test for determining whether a Bivens claim may proceed. Goldey, 606 U.S. at 944. First, a court must consider whether the case before it "presents 'a new Bivens context'—that is, whether the case 'is different in a meaningful way' from the cases in which [the Supreme] Court has recognized a Bivens remedy." Id. (quoting Ziglar, 582 U.S. at 139). "The Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if even one distinguishing fact has the potential to implicate separation-of-powers considerations." Tate v. Harmon, 54 F.4th 830, 846 (4th Cir. 2022) (citing Egbert, 596 U.S. at 486). If a court finds that a claim presents a new context, it must determine "whether there are 'special factors' indicating that 'the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed.'" Goldey, 606 U.S. at 944 (quoting Egbert, 596 U.S. at 492). "That analysis is anchored in 'separation-of-powers principles.'" Id. (quoting Ziglar, 582 U.S. at 135).

The court agrees with the defendants that Wright's case presents a new context that is meaningfully different from the three previous cases in which the Supreme Court recognized an implied cause of action for damages: Bivens itself, Davis v. Passman, 442 U.S. 228 (1979), and Carlson v. Green, 446 U.S. 14 (1980). In Bivens, "the Supreme Court created an implied cause of action under the Fourth Amendment to recover damages suffered as the result of a

11

warrantless search and seizure" by agents with the Federal Bureau of Narcotics. Orellana v. Godec, 145 F.4th 516, 522 (4th Cir. 2025). In Davis, the Supreme Court "extended Bivens to a congressional staffer fired because of her sex in violation of the Fifth Amendment." Id. And in Carlson, the Supreme Court "extended Bivens to a third context, allowing a federal prisoner's estate to bring an Eighth Amendment claim for deficient [medical] care" that allegedly resulted in the prisoner's death. Id. None of those cases involved the failure to protect an inmate or parolee from being threatened or harassed by prison informants or other inmates. As the United States Court of Appeals for the Fourth Circuit recognized in Bulger v. Hurwitz, a case brought by the estate of an inmate who was beaten to death by fellow inmates, claims premised on the failure to protect an inmate from being harmed by others "exceed the bounds of liability the [Supreme] Court's previous Bivens actions established" and "instead present a new context." 62 F.4th at 138; see also Fisher v. Hollingsworth, 115 F.4th 197, 207 (3d Cir. 2024) (concluding that an inmate's "failure-to-protect claim differs meaningfully from the Court's three Bivens cases").

Additionally, for reasons set forth in Goldey, Bulger, and other appellate decisions, special factors counsel against extending a Bivens remedy in this case. "To begin with, Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." Goldey, 606 U.S. at 944. Approximately fifteen years after Carlson was decided, Congress enacted the Prison Litigation Reform Act (PLRA), which "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Mays v. Smith, 70 F.4th 198, 206 (4th Cir. 2023) (quoting Ziglar, 582 U.S. at 148). The PLRA "does not provide for a standalone damages remedy against federal jailers, a silence that

speaks volumes and counsels strongly against judicial usurpation of the legislative function to create one." Id. (internal quotation marks and citations omitted); see also Bulger, 62 F.4th at 141 (concluding that the existence of the PLRA counseled hesitation in extending Bivens to Eighth Amendment claims of failure to protect and intervene).

Additionally, alternative remedial structures exist through which allegedly unlawful actions can be brought to the attention of the BOP and the CSOSA. See Egbert, 596 U.S. at 493 ("If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'") (quoting Ziglar, 582 U.S. at 137); see also Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018) ("Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies."). For instance, "the BOP's Administrative Remedy Program allows all inmates to seek formal review of an issue related to 'any aspect' of their confinement." Mays, 70 F.4th at 205 (quoting 28 C.F.R. § 542.10(a)). Similarly, the CSOSA's Office of Professional Responsibility (OPR) is responsible for investigating "possible instances of internal violations of laws or regulations, mismanagement, gross waste of funds, abuse of authority, substantial and specific danger to public health and safety, and allegations of misconduct by CSOSA employees," and complaints regarding such matters may be submitted directly to the OPR. See Complaints, https://www.csosa.gov/complaints/ (last accessed Feb. 16, 2026). "The existence of such alternative remedial procedures counsel against allowing Bivens suits even if such 'procedures are not as effective as an individual damages remedy.'" Goldey, 606 at 944–45 (quoting Egbert, 596 U.S. at 498).

13

Finally, "a substantial burden would be placed on government operations if the court were to authorize a new category of prison [or parole] litigation." Bulger, 62 F.4th at 141–42; see also Goldey, 606 U.S. at 944 (noting that "extending Bivens to allow an Eighth Amendment claim for excessive force could have negative systemic consequences for prison officials and the 'inordinately difficult undertaking' of running a prison") (citing Turner v. Safley, 482 U.S. 78, 84–85 (1987)).

The Supreme Court has made clear that if there is "any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" courts must decline to extend Bivens. Egbert, 596 U.S. at 496 (quoting Ziglar, 582 U.S. at 136). Such reasons exist in this case. Thus, Wright's constitutional claims against the defendants in their individual capacities are not cognizable under Bivens.

For these reasons, the court will grant the defendants' motion to dismiss.[4]

## B.   Wright's Motions to Amend

The court turns now to Wright's motions to amend. As indicated above, Wright seeks to add various claims and defendants. For the following reasons, the motions will be denied.

First, to the extent Wright seeks to add federal constitutional claims against the BOP and BOP officials in their official capacities, such claims are barred by the doctrine of sovereign immunity and therefore subject to dismissal for lack of subject matter jurisdiction. See Meyer, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); Lancaster v. Sec'y of the Navy, 109 F.4th 283, 293

---

[4] In light of the court's rulings, the court finds it unnecessary to determine whether certain claims are barred by the applicable statute of limitations or the doctrine of qualified immunity.

n.6 (4th Cir. 2024) ("Bivens does not waive sovereign immunity, so it does not authorize damages suits against federal officers in their official capacity."). Thus, allowing Wright to amend the operative complaint to include additional federal constitutional claims against the BOP or BOP officials in their official capacities would be futile.

Second, for the reasons set forth above, Wright has not identified any federal constitutional claim for which a remedy would be available under Bivens. In his proposed amendments, Wright alleges that he was threatened and harassed by inmates at FCI Edgefield FCI Hazelton, and FCI Beckley; that prison informants continued to engage in threatening and intimidating behavior while he was on parole supervision in 2022 and 2023; that the existing defendants and other BOP officials failed to intervene or protect him; and that he attempted suicide on June 12, 2024, months after being released from parole, "due to the atrocities he suffered." ECF No. 30 at 1; ECF No. 30-5 at 8–15. While the court sympathizes with Wright, his allegations do not give rise to a Bivens remedy. As the Fourth Circuit explained in Bulger, in which a federal inmate died at the hands of other inmates, claims of failure to protect and intervene are materially distinct from those asserted in the three cases in which the Supreme Court previously recognized a Bivens remedy, including the Eighth Amendment claim asserted in Carlson, and thus present a new context. Bulger, 62 F.4th at 137–39. And because special factors counsel against extending Bivens to the set of facts alleged, Wright has no viable Bivens claim. Thus, amending the complaint to include additional constitutional claims under Bivens would be futile.

Third, Wright has not provided any additional allegations that would support a plausible claim under Title IX against the BOP or unidentified BOP officials. Even assuming

that prison informants harassed and threatened Wright while he was participating in a G.E.D. class at a federal prison, see ECF No. 30-5 at 14, Title IX does not provide a private right of action against a federal agency or federal officials.

Fourth, to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "Section 1983 does not apply to federal officials acting under color of federal law." Settles v. United States Parole Comm'n, 429 F.3d 1098, 1104 (D.C. Cir. 2005). To the extent Wright seeks to add claims under § 1983 against the existing defendants or unidentified federal officials, he has not plausibly alleged that any federal official was acting under color of state law.

Fifth, Wright has not set forth any plausible claim under federal law against Washington, D.C. See ECF No. 30 at 1 (seeking leave to add D.C. as a new defendant); ECF No. 30-5 at 13 (asserting federal constitutional claims under Bivens and § 1983 based on alleged harassment by D.C. employees' "informants"). A Bivens action "must be brought against . . . federal officers in their individual capacities," Buonocore v. Harris, 65 F.3d 347, 352 (4th Cir. 1995) (internal quotation marks omitted); Wright has no viable Bivens claim against D.C. Although a municipality may be sued under § 1983, it "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, a municipality is responsible only for its "own illegal acts." Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 402 (4th Cir. 2014). "To hold a

municipality liable for a constitutional violation under § 1983, a plaintiff must show that the execution of a policy or custom of the municipality caused the violation." Misjuns v. City of Lynchburg, 139 F.4th 378, 384 (4th Cir. 2025). Wright has not alleged facts sufficient to satisfy this requirement. Even assuming that a D.C. employee somehow committed a constitutional violation, "[i]it is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999)).

Additionally, Wright has not set forth any plausible federal claim against Amtrak or the unknown Amtrak employee who allegedly told him that he could not move from his assigned seat while traveling by train to a halfway house in Maryland. See ECF No. 30-5 at 16. While Wright may "believe that prison officials conspired with Amtrak employees to derail [him] from [his] freedom," id., he does not allege facts sufficient to support this conclusory assertion. Moreover, courts have held that Amtrak, a federally chartered corporation, cannot be sued for damages for alleged constitutional violations. See Am. Premier Underwriters, Inc. v. Nat. Railroad Passenger Corp., 709 F.3d 584, 590 (6th Cir. 2013) (citing Meyer, 510 U.S. at 484 (declining to extend the implied right of action recognized in Bivens to federal agencies)). And to the extent Wright believes that the unknown Amtrak employee is a federal official for purposes of Bivens, he has not identified any constitutional claim for which a Bivens remedy would be available. Nor has Wright alleged facts from which the court could reasonably infer that the Amtrak employee would be subject to suit under § 1983. Accordingly, amending the

17

operative complaint to assert federal constitutional claims against Amtrak and the unknown Amtrak employee would be futile.

Finally, to the extent Wright seeks to add claims based solely on the laws of D.C., Virginia, or another state, the court declines to exercise supplemental jurisdiction over such claims. Since the claims do not arise "under the Constitution, laws, or treaties of the United States," the court does not have jurisdiction to resolve them under 28 U.S.C. § 1331, and Wright cannot establish that diversity jurisdiction exists under 28 U.S.C. § 1332(a). As other courts have explained, a federal agency like the BOP "is not a 'citizen of a state,' and thus its presence destroys complete diversity." Frey v. EPA, 270 F.3d 1129, 1137 (7th Cir. 2001); see also Commercial Union Ins. Co. v. United States, 999 F.2d 581, 584 (D.C. Cir. 1993) ("It is well established . . . that the United States is not a citizen for diversity purposes and that 'U.S. agencies cannot be sued in diversity.'") (quoting Gen. Ry. Signal Co. v. Corcoran, 921 F.2d 700, 703 (7th Cir. 1991)). Courts have reached the same conclusion with respect to federal officials sued in their official capacities. See Gen. Ry. Signal Co., 921 F.2d at 704 ("We decline to distinguish agencies from their administrators for the purpose of determining diversity jurisdiction."). Although the court has the discretion to exercise supplemental jurisdiction over "other claims," 28 U.S.C. § 1367(a), the court may decline to do so if it "has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). Here, the court has concluded that all of the federal claims asserted in the operative complaint and the proposed amendments are or would be subject to dismissal at the pleading stage. Consequently, the court declines to exercise supplemental jurisdiction over any other claims that Wright has attempted to assert under the laws of D.C., Virginia, or another state. See Williams v. Mitchell, 122 F.4th 85, 92

18

(4th Cir. 2024) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those without prejudice.") (internal quotation marks omitted).

### IV.    Conclusion

For the reasons stated, the defendants' motion to dismiss, ECF No. 26, is **GRANTED**, and Wright's motions to amend, ECF Nos. 30 and 34, are **DENIED**. An appropriate order will be entered.

Entered: February 19, 2026

Michael F.
Urbanski
U.S. District Judge
2026.02.19
17:06:25 -05'00'

Michael F. Urbanski
Senior United States District Judge